**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DONALD MARIANI** and **SUSAN**
**OVERBAUGH,**

                     **Plaintiffs,**              **1:08-cv-730**
                                              **(GLS/RFT)**

        **v.**

**GLENN STEVENS,**

                     **Defendant.**
_____

**APPEARANCES:**                **OF COUNSEL:**

**FOR THE PLAINTIFFS:**
Office of Bethany Schumann-McGhee    BETHANY SCHUMANN-
164 Guy Park Avenue, Suite 2             MCGHEE, ESQ.
Amsterdam, NY 12010

Office of Elmer R. Keach, III          ELMER R. KEACH, III, ESQ.
1040 Riverfront Center
P.O. Box 70
Amsterdam, NY 12010

**FOR THE DEFENDANT:**
Murphy, Burns Law Firm             THOMAS K. MURPHY, ESQ.
226 Great Oaks Boulevard
Albany, NY 12203

**Gary L. Sharpe**
**District Court Judge**

## **MEMORANDUM-DECISION AND ORDER**

### **I. Introduction**

Plaintiffs Donald Mariani and Susan Overbaugh bring this action under 42 U.S.C. § 1983 against defendant Glenn Stevens, alleging violations of their Fourth Amendment rights.  (*See* Compl., Dkt. No. 1:3.) Pending is Stevens's motion for summary judgment on plaintiffs' fifth cause of action for warrantless search of their residence.  (Dkt. No. 26.)  For the reasons that follow, the motion is granted.

### **II. Background**

#### **A.    Factual History**

Donald Mariani and Susan Overbaugh share a residence at 7108 Suzanne Lane, Guilderland, New York.  (*See* Def. SMF ¶ 1, Dkt. No. 26:6.) On July 7, 2005, Mariani was arrested at his residence by Guilderland Police Officer Glenn Stevens.  (*See id.*)  At the time of his arrest, Mariani and Overbaugh were suspects in a theft of food that occurred earlier the same day at the Price Chopper in Wilton, New York.  (*See id.* at ¶ 3.)  The matter was being investigated by the New York State Police, (*see id.*), and Stevens was acting pursuant to the State Police's request that he instruct Overbaugh to contact the State Police regarding the theft, (*see* Compl. ¶

2

10, Dkt. No. 1:3).

When Officer Stevens first arrived to plaintiffs' house, Mariani was outside the house. (*See* Pls. Resp. SMF ¶ 1, Dkt. No. 33:5.) While the nature and contents of the initial exchange is in dispute, both Stevens and Mariani testified that Officer Stevens exited his car, approached Mariani, and asked him whether Overbaugh resided at the house, to which Mariani answered in the affirmative. (*See* Murphy Aff., Def. Ex. C, Stevens Dep. at 15-17, Dkt. No. 26:4; Mariani Dep. at 45-52, Dkt. No. 33:1.) Immediately thereafter, Overbaugh arrived home, pulling into the driveway. (*See* Keach Aff., Pls. Ex. A, Mariani Dep. at 48, Dkt. No. 33:1.) With Mariani standing next to the driver's side door of Overbaugh's car, Officer Stevens walked over to Overbaugh to ask if she was in fact Susan Overbaugh. (*See id.* at 51-53.)

After Overbaugh exited her car, Mariani took her by the arm and began to walk her back to the house, but on the way, Mariani turned around to tell Officer Stevens "if you don't have a warrant, you get the fuck out of here right now." (*See id.* at 53.) Stevens told Mariani to let go of Overbaugh's arm. (*See id.*; *see also* Murphy Aff., Def. Ex. C, Stevens Dep. at 18, Dkt. No. 26:4.) Mariani responded by telling Officer Stevens, "[t]his

3

is private property.... I live here, she lives here.  Now, you get the fuck out

of here right now." (*See* Keach Aff., Pls. Ex. A, Mariani Dep. at 54, Dkt.

No. 33:1.)  During this exchange, Mariani told Overbaugh not to speak to

Officer Stevens.  (*See id.* at 54-55.)

At this time, Officer Stevens alleges that he told Mariani he was

under arrest and attempted to take Mariani into custody.  (*See* Murphy Aff.,

Def. Ex. C, Stevens Dep. at 19, Dkt. No. 26:4.)  While the sequence of the

following events are disputed, Stevens then sprayed Mariani in the face

with pepper spray.  (*See* Keach Aff., Pls. Ex. A, Mariani Dep. at 60-62, Dkt.

No. 33:1.)  Mariani then said, "[n]ow you're really fucked," said there was

an active camera in the garage, and ran into the house.  (*See id.* at 62.)

Officer Stevens pursued Mariani into the house.  (*See id.* at 63.)  Inside the

house, Stevens repeatedly told Mariani to get on the floor, sprayed him in

the face again, and continued to tell Mariani to comply with his orders.

(*See id.* at 64-70.)  Several other officers then entered the house, forced

Mariani to the ground, and placed him in handcuffs.  (*See id.* at 70-72.)

After submitting to a pat-down search, Mariani was taken out of the house

and placed in a transport car.  (*See id.* at 73.)  Mariani did not say anything

further.  (*See id.* at 74-75.)

Officer Stevens then asked Overbaugh for permission to search the residence.  (*See* Def. SMF ¶ 4, Dkt. No. 26:6.)  Overbaugh consented to Stevens's request, saying "yes," that she "had nothing to hide."  (Keach Aff., Pls. Ex. B, Overbaugh Dep. at 53, Dkt. No. 33:2.)  And upon Stevens's specific request to search the cellar, Overbaugh again consented, saying "go ahead."  (*See id.* at 53-54.)  As a result of the search, Officer Stevens took several food items from the house and the video tape from the garage. (*See id.* at 57-60.)

Mariani was charged with disorderly conduct, violent behavior, resisting arrest, third-degree menacing, and criminal possession of stolen property, all in violation of the New York State Penal Law.  (*See* Defs. SMF ¶ 2, Dkt. No. 26:6.)

## B.   <u>Procedural History</u>

On July 7, 2008, Mariani and Overbaugh filed suit against Stevens, Joseph Mazzone, James Murley, and the Town of Guilderland, asserting six causes of action under the Fourth Amendment of the United States Constitution pursuant to § 1983: (1) false arrest; (2) malicious prosecution; (3) excessive use of force; (4) unreasonable seizure; (5) warrantless search of their home; and (6) implementation of unconstitutional policies

5

and failure to train, supervise, discipline, and implement preventive policies. (*See* Compl., Dkt. No. 1:3.) By stipulation and order, Mariani and Overbaugh's action against Mazzone, Murley, and the Town of Guilderland was subsequently discontinued. (*See* Dkt. Nos. 24, 25.) On March 10, 2010, Stevens moved for summary judgment on Mariani and Overbaugh's warrantless search claim. (*See* Dkt. No. 26.)

### III.  Standard of Review

The standard for the grant of summary judgment is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its previous opinion in *Bain v. Town of Argyle*, 499 F. Supp. 2d 192, 194-95 (N.D.N.Y. 2007).

### IV.  Discussion

"The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant ...." *Georgia v. Randolph*, 547 U.S. 103, 106 (2006) (citations omitted). And while "a physically present co-occupant's stated refusal to permit entry prevails," *see id.*, "the consent of one who possesses common authority over premises or effects is valid as

against the absent, nonconsenting person with whom that authority is shared," *United States v. Matlock*, 415 U.S. 164, 170 (1974).  Accordingly, "if [one tenant] with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out."  *Randolph*, 547 U.S. at 121.  Thus, "[s]o long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection," the voluntary consent of the solitary co-tenant will be controlling. *Id.*

Here, the parties do not dispute that Susan Overbaugh had the authority to consent to a search of her home.  Nor do the parties dispute that Overbaugh consented to a search of her home and that she was not in custody and was not under arrest when she gave her consent.  (*See* Pls. SMF ¶¶ 4-6, Dkt. No. 33:5.)  Rather, plaintiffs contend that Mariani told Stevens not to enter the house without a warrant.  However, the record, including Mariani and Overbaugh's deposition testimony, conclusively shows that when Mariani told Stevens that he did not have a warrant and to leave the property, Stevens was only inquiring into Overbaugh's identity

and residence.  *See Randolph*, 547 U.S. at 142 ("[T]he rule [is] that a physically present inhabitant's *express* refusal of consent to a police search is dispositive as to him...." (emphasis added)).  At no point during this parley did Stevens ask to perform a search of the residence.  Moreover, there is no evidence, testimonial or otherwise, to suggest that Stevens intended or desired to perform such a search at that time.  Equally important, the events that occurred after Mariani ordered Stevens to leave the property but before Stevens asked to search the residence were quite significant.  According to Mariani himself, these intervening events included Mariani being told to let go of Overbaugh, being pepper sprayed, fleeing into his home, resisting arrest, and being arrested and placed in a police car.  And while Stevens and his fellow officers were responsible for removing Mariani from the house, there is no evidence from which a reasonable jury could infer that he was removed in order for Officer Stevens to avoid a possible objection to his search.

Therefore, having drawn all reasonable inferences in favor of plaintiffs, the court is unable to discern any genuine issue of material fact as to Mariani and Overbaugh's claim of warrantless search of their home.

Still, even if the court were to construe Mariani's preliminary

statement telling Officer Stevens "if you don't have a warrant, you get the fuck out of here right now" as broadly encompassing the refusal to consent to a search of the house, the warrantless search claim would nonetheless be subject to dismissal based on qualified immunity.[1]  "Qualified immunity protects government officials from civil liability when performing discretionary duties 'insofar as their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known." *Demoret v. Zegarelli*, 451 F.3d 140, 148 (2d Cir. 2006) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Under the clearly established law which the court has discussed, it was objectively reasonable for Officer Stevens to have believed his actions were lawful at the time he sought and obtained permission from Overbaugh, the only tenant present at the time he made his request.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Stevens's motion for summary judgment (Dkt. No. 26) is **GRANTED** and plaintiffs' fifth cause of action for warrantless search

---

[1]Furthermore, assuming Mariani's claim remained viable, the court is hard pressed to find a similar right that would be preserved to Overbaugh in light of her consent and consequent loss of a privacy expectation.

of their home is **DISMISSED** and Susan Overbaugh is **TERMINATED** from

the action; and it is further

     **ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

September 15, 2010
Albany, New York

United States District Court Judge